IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-53-BO

DEXTER EDWARDS D/B/A EDWARDS )
LAND & CATTLE, )
)
         Plaintiff, )
)
v. )   O R D E R
)
GENEX COOPERATIVE, INC., )
)
         Defendant. )

This cause comes before the Court on defendant's motion for summary judgment and plaintiff's motion for judgment on the pleadings or in the alternative for summary judgment. The appropriate responses or replies have been filed, and a hearing was held on the motions before the undersigned on January 3, 2018, at Raleigh, North Carolina. Also pending before the Court is a motion to strike filed by defendant, to which plaintiff has responded. In this posture, all of the pending motions are ripe for ruling.

## BACKGROUND

Dexter and Nicholas Edwards filed this action alleging a claim for breach of contract against defendant, Genex Cooperative. Dexter Edwards, doing business as Edwards Land & Cattle, engages in the genetic reproduction of cattle, specializing in "pure-bred genetics." Edwards Land & Cattle (EL&C) contracted with Genex for many years to provide liquid nitrogen to cool storage tanks containing bovine embryos and semen. This case arises out of an alleged misrepresentation to EL&C by Genex that Genex had filled plaintiff's storage tanks with liquid nitrogen on August 31, 2015; plaintiff was billed for an August 31, 2015, delivery of liquid

nitrogen when in fact no delivery was made. [DE 49-2]. On September 17, 2015, Genex notified EL&C that it would no longer be providing them with liquid nitrogen services as Genex would no longer have a salesperson in that area. [DE 49-1]. Nicholas Edwards checked the level of liquid nitrogen in the tanks on or about October 12, 2015, [DE 49]; [DE 46-2] Edwards, N. Depo. at 81, and, due an insufficient amount of liquid nitrogen, much of plaintiff's reproductive bovine stock had been destroyed.

Plaintiff Nicholas Edwards was removed as a plaintiff in the case on a motion by the plaintiffs, and plaintiff's attempt to amend the complaint to add a claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75.1 was twice denied by the Court. The parties have engaged in discovery and filed the instant dispositive motions.

## DISCUSSION

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) allows for a party to move for entry of judgment after the close of the pleadings stage, but early enough so as not to delay trial. Fed. R. Civ. P. 12(c). Courts apply the Rule 12(b)(6) standard when reviewing a motion under Rule 12(c). *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 375 (4th Cir. 2012). "Judgment on the pleadings is not properly granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *United States v. Any & all Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). It is within a court's discretion whether to consider matters outside the pleadings if presented, and thereby convert the motion for judgment on the pleadings to one for summary judgment under Rule 56. *A. S. Abell Co. v. Baltimore Typographical Union No. 12*, 338 F.2d 190, 193 (4th Cir. 1964).

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). When deciding cross-motions for summary judgment, a court considers each motion separately and resolves all factual disputes and competing inferences in the light most favorable to the opposing party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

The service contract between the parties signed in 2004 provided as follows. Delivery of liquid nitrogen was to be provided by defendant every ten weeks, the agreement would remain effective until terminated by either party with sixty days-notice, and the customer, plaintiff, "accepts full and sole responsibility to maintain [liquid nitrogen] biostat in good operating condition, to monitor [liquid nitrogen] level routinely and make the [liquid nitrogen] tank fully

3

accessible to the Genex representative for servicing." [DE 39-1]. The contract further provided that defendant would not accept responsibility or liability for embryos in the storage tanks and would only replace lost semen when the product was lost through "unwillful neglect (tank failure, etc.)". *Id.* The contract between plaintiff and defendant was signed by Nicholas Edward and a Genex representative, Robert Martin. *Id.* Plaintiff's amended complaint alleges that a contract formed the basis of its purchase of liquid nitrogen from defendant, and that defendant regularly and customarily, pursuant to the contract, kept plaintiff's tanks properly filled. [DE 37] Amd. Cmp. ¶¶ 6,7. Defendant admits as much in its answer. [DE 39] Ans. Amd. Cpm. ¶¶ 6,7.

According to Nicholas Edwards, Dexter Edwards' son and farm manager, when the EL&C embryo and semen storage tanks were filled with liquid nitrogen by defendant, the technician left a green half-sheet of paper on his desk, which would indicate to Mr. Edwards that the technician had been by to fill the tanks. [DE 46-2] Edwards, N. Depo at 46-47. Nicholas Edwards further stated that during breeding season, November through June, he would be in and out of the tanks and able to check them as often as daily and as little as one time per week. *Id.* at 52. When they were not in breeding season, Mr. Edwards testified that he was either not monitoring the tanks a lot, or not at. *Id.* at 52-53. According to Dexter Edwards, he had never had a problem with Genex's service prior to the cancellation of the contract. [DE 46-3] Edwards, D. Depo. at 72.

Corey Peters, Genex's territory sales manager who serviced plaintiff's tanks, testified that he placed a sticker on each of plaintiff's storage tanks which stated that the owner/user of the tank was responsible for monitoring the liquid nitrogen level in the tanks. [DE 46-5] Peters Depo. at 15. Mr. Peters further testified that he based the schedule of his service calls on the shortest tank, that is, the tank that would have to be refilled most often, and that the shortest tanks would need to be refilled every three to four months. *Id.* at 33-34. According to a tag hanging from one of

4

plaintiff's tanks on which Mr. Peters recorded his service visits, in 2015 Mr. Peters serviced EL&C tanks on April 17, 2015, and July 13, 2015; in 2014 he serviced the tanks in June, September, and December. [DE 46-10 at 7].[1]

The parties do not dispute that Mr. Peters filled plaintiff's tanks with liquid nitrogen on July 13, 2015. *See* [DE 50 at 4]. However, an invoice provided to plaintiff from defendant showed that the service date for a tank fill was August 31, 2015, the same date as the statement date. [DE 49-2]. In a letter dated September 17, 2015, Mr. Peters informed plaintiff that defendant's liquid nitrogen service would be discontinued on receipt of the letter. [DE 49-1]. The letter further stated that plaintiff's tank was serviced on August 31, 2015, to allow plaintiff time to find a new provider. *Id.* The parties further do not dispute that plaintiff's tanks were not in fact serviced on August 31, 2015.

*Plaintiff's motion for judgment on the pleadings or summary judgment*

Plaintiff advances only a claim for breach of contract against defendant, alleging that defendant's failure to timely deliver liquid nitrogen resulted in damage to plaintiff. A claim for breach of contract under North Carolina law, which both parties have argued applies in this case, requires a showing first of the existence of a valid contract and second of breach of the terms of the contract. *Poor v. Hill*, 138 N.C. App. 19, 26 (2000). A valid contract requires mutuality of agreement supported by adequate consideration. *Croom v. Goldsboro Lumber Co.*, 182 N.C. 217, 108 S.E. 735, 737 (1921); *Creech ex rel. Creech v. Melnik*, 147 N.C. App. 471, 477 (2001). A breach of contract is actionable where the breach is material, which means that it is "one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform." *Long v. Long*, 160 N.C. App. 664, 668

---

[1] An additional service date appears to be listed for 2014 but the date is not readable on the exhibit.

(2003). Failure to comply with a duty assumed by a party to a contract constitutes breach. *Sechrest v. Forest Furniture Co.*, 264 N.C. 216, 217 (1965) (internal alterations and citation omitted). The remedy for breach of contract is actual damages, "which are those that may reasonably be supposed to have been in the contemplation of the parties when the contract was made or which will compensate the injured party for the loss which fulfillment of the contract could have prevented or the breach of it has entailed." *Weyerhaeuser Co. v. Godwin Bldg. Supply Co.*, 292 N.C. 557, 560–61 (1977) (internal quotation and citation omitted).

The terms of the contract between plaintiff and defendant plainly provide that the responsibility to monitor the liquid nitrogen levels in the storage tanks was solely plaintiff's. In support of plaintiff's motion for judgment on the pleadings and in opposition to defendant's motion for summary judgment, plaintiff takes the position that the written contract between plaintiff and defendant is not valid and is therefore unenforceable. Plaintiff contends first that, because the signor of the contract, Nicholas Edwards, is plaintiff's son and the EL&C farm manager, "the issue arises whether Nicholas' actions can be imputed to the Plaintiff, Dexter Edwards." [DE 49 at 8]. Plaintiff further notes the location of Nicholas Edwards' signature on the document, arguing that he did not agree to all provisions. Plaintiff also contends that the contract is poorly written and ambiguous in many respects and is unconscionable.

As to Nicholas Edwards' authority to enter into the written contract with defendant, there are no facts or allegations which would support that Nicholas Edwards did not have, at a minimum, apparent authority to enter into the contract with defendant. It is undisputed that Nicholas Edwards signed the contracts, Dexter Edwards testified that he left review of the agreements with defendant to his son Nicholas, [DE 46-3] Edwards, D. Depo. at 56-7, and there is no evidence that Nicholas Edwards gave any indication to defendant that he was acting outside the scope of his apparent

authority to enter into the contract. *See Branch v. High Rock Realty, Inc.*, 151 N.C. App. 244, 250 (2002). "Pursuant to the doctrine of apparent authority, the principal's liability is to be determined by what authority a person in the exercise of reasonable care was justified in believing the principal conferred upon his agent." *Id.* Plaintiff has neither pleaded nor come forward with any evidence which would tend to show that a person in the exercise of reasonable care would have been unjustified in believing that Nicholas Edwards had full authority to enter in a contract to provide liquid nitrogen services and that plaintiff would be bound thereby.

Plaintiff's contention regarding the location of Nicholas Edwards' signature as raising some question as to what portion of the contract was entered into is unsupported by any pleading or evidence and is without merit. Directly above Nicholas Edwards' signature reads "I have read the above Embryo Storage Policy and agree fully with its terms." [DE 39-1]. As to the ambiguity of the terms of the contract, plaintiff's argument fails. "A contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law." *Schenkel & Schultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 362 N.C. 269, 273 (2008). "An ambiguity exists in a contract when either the meaning of the words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Id.*

Plaintiff points to the following language from the damages limitations section of the contract as ambiguous:

> Genex will not accept responsibility or liability for embryos or any other frozen biologic products stored in customer's tank(s) that are filled with [liquid nitrogen] by its employees.

The Court finds nothing in this provision to be ambiguous; the provision sets out a limitation on damages for stored embryos or other biologic product in a customer's tank which is filled with liquid nitrogen by Genex employees. Plaintiff has further failed to demonstrate or create a genuine

7

issue of material fact as to whether a damages limitation provision is unconscionable or void as against public policy.

Moreover, defendant correctly argues that if the written contract between plaintiff and defendant is unenforceable, then there is no contract the terms of which defendant could have breached. Although plaintiff contends there was "without question" a verbal contract between the parties, plaintiff has failed to plead or establish the terms of that verbal contract. Finally, even viewing the facts in the light most favorable to plaintiff and finding there to be a oral contract between the parties, plaintiff has proffered no allegation or evidence that this contract was for a definite term, and thus the oral contract would have been terminable at will by either party. *City of Gastonia v. Duke Power Co.*, 19 N.C. App. 315, 318 (1973) (citation omitted). Plaintiff's loss occurred after the termination of the contract on September 17, 2015, and thus his claim for breach would fail.

*Defendant's motion for summary judgment*

When viewing the facts in the light most favorable to plaintiff, plaintiff's breach of contract claim fails and defendant is entitled to summary judgment in its favor. It is undisputed that plaintiff's tanks were filled by defendant on July 13, 2015, and proper notice was given to plaintiff regarding defendant's cancellation of the contract. Although the invoice and cancellation notice sent to plaintiff listed the incorrect date for the most recent date of service, the hanging tag placed on plaintiff's storage tank by Mr. Peters after servicing the tanks reflected a service date of July 13, 2015, [DE 46-10 at 7], and plaintiff retained at all times the duty under the contract to monitor the levels of liquid nitrogen in the EL&C tanks. That the liquid nitrogen supply in plaintiff's tanks became too low or ran out prior to plaintiff's inspection is not evidence of defendant's breach.

8

Plaintiff argues in opposition to summary judgment that defendant's misstatement of the last date of service on both the final invoice and the cancellation letter should operate as an estoppel against defendant's argument that plaintiff breached the contract by failing to monitor his tanks.

> The essential elements of equitable estoppel as related to the party claiming the estoppel are: (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action thereon of such a character as to change his position prejudicially.

*Crisp v. E. Mortg. Inv. Co.*, 179 N.C. App. 213, 217 (2006) (quoting *Meacham v. Montgomery County Board of Education,* 59 N.C.App. 381, 386 n. 2 (1982)). While plaintiff may argue that he had come to rely on defendant's timely and regular service of the liquid nitrogen tanks, any argument that he lacked the means to know the truth of whether the tanks were, in fact, filled is without merit. As plaintiff cannot establish an essential element of an equitable estoppel argument, his theory fails.

The contract terms provided that Genex would fill plaintiff's storage tanks with liquid nitrogen and that plaintiff would be responsible for monitoring the liquid nitrogen levels in the tanks to prevent loss of or damage to his stored biologic products. Plaintiff has failed to create a genuine issue of material fact as to whether Genex breach the service contract. Because in deciding the instant motions the Court need not reach the issue of damages, it declines to strike the affidavit of Dr. Hinshaw and denies defendant's motion to strike.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [DE 45] is GRANTED, plaintiff's motion for judgment on the pleadings [DE 48] is DENIED, and defendant's

motion to strike [DE 54] is DENIED. The clerk is DIRECTED to enter judgment and close the file.

SO ORDERED, this __7__ day of February, 2018.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE